UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| V. | § § | CASE NUMBER W:21-CR-00213 |
| | § § | |
| ANDRE EDWARDS SANCHEZ | § | |

### DEFENDANT'S MOTION TO DISMISS INDICTMENT

COMES NOW Defendant, Andre Sanchez, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), and moves to dismiss the Indictment, which charges possession of a firearm by one who is an unlawful user of or addicted to a controlled substance, in violation of 18 U.S.C. § 922(g)(3). *See* Doc. No. 3. The Court should dismiss the Indictment because § 922(g)(3) is unconstitutional under the Second Amendment under the standard announced by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). The statute also violates the Due Process Clause of the Fifth Amendment. In support thereof, Mr. Sanchez asserts the following:

### I.     BACKGROUND[1]

On April 30, 2021, law enforcement witnessed a vehicle traveling down a residential street. Officers conducted a license plate search which indicated that the vehicle was stolen. After the vehicle came to a stop and the driver was taken into custody, officers confirmed that the driver was Defendant, Andre Sanchez. Officers claimed that Mr. Sanchez was yelling, screaming, and cursing during his arrest and further alleged that he appeared to be intoxicated. During a search of his person, law enforcement stated they found suspected Xanax pills and suspected marijuana in

---

[1] In setting forth the statement of facts, Mr. Sanchez provides information for this Court regarding the allegations against him. He does not stipulate to the truth or accuracy this information.

Mr. Sanchez's pocket. A separate officer then indicated that he believed Mr. Sanchez to be in possession of a gun that was found on the ground. Subsequently, officers obtained a blood draw from Mr. Sanchez, and a laboratory test confirmed the presence of THC. Prior to this arrest, Mr. Sanchez had one drug related juvenile adjudication for possession of marijuana in 2017.

On December 14, 2021, a grand jury returned an Indictment, charging Mr. Sanchez with possession of a firearm by an unlawful user of or one addicted to a controlled substance. *See* Doc. No. 1.

## II.     LEGAL STANDARD

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also*, *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *Flores*, 404 F.3d at 325.

## III.     LEGAL ARGUMENT

Section 922(g)(3) is unconstitutional for two distinct reasons. First, § 922(g)(3) violates the Second Amendment, facially and as applied, because historical traditions do not support prohibiting persons who are accused of being a "user of" or "addicted to" a controlled substance

from possessing firearms. Second, § 922(g)(3) violates the Due Process Clause of the Fifth Amendment because, facially and as applied, the statute is so vague that it fails to provide fair notice of the acts prohibited and further allows for arbitrary and discriminatory enforcement.

### A. Section 922(g)(3) Unconstitutionally Infringes on an Individual's Right to Bear Arms Under the Second Amendment

The Second Amendment to the United States Constitution mandates that a "well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. CONST. amend. II. The Supreme Court held in *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008), that the Second Amendment codified an individual right to possess and carry weapons, explaining that the inherent right of self-defense, particularly in the home, is central to the right. *See also McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (holding "that individual self-defense is the central component of the Second Amendment right."). The right is, however, not unlimited, and the Supreme Court acknowledged the legitimacy of certain "longstanding prohibitions on the possession of firearms…" *Heller*, 544 U.S. at 626-27.

The test for determining the legitimacy of Second Amendment prohibitions was unclear after *Heller*, and the Fifth Circuit, along with several other circuits, "adopted a two-step inquiry for analyzing laws that might impact the Second Amendment." *Hollis v. Lynch*, 827 F.3d 436, 446 (5th Cir. 2016).[2]  The different frameworks employed by each of the circuits have, however, since been repudiated by the Supreme Court. *See Bruen*, 142 S.Ct. at 2130.

---

[2] Under the two-part test, employed by the Fifth Circuit, courts first asked "whether the conduct at issue fell within the scope of the Second Amendment right." *United States v. McGinnis*, 956 F.3d 747, 754 (5th Cir. 2020) (quoting *Nat'f Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Fierarms & Explosives [NRA]*, 700 F.3d 185, 194 (5th Cir. 2012). "To make that determination, [courts] look[ed] to whether the law harmonize[d] with the historical traditions associated with the Second Amendment guarantee." *McGinnis*, 956 F.3d at 754. If the conduct was outside the scope of the Second Amendment, then the law was deemed constitutional, otherwise, courts proceeded to the second step to determine whether to apply strict or intermediate scrutiny. *Id.* "Under this framework, a regulation that threaten[ed] a right at the core of the Second Amendment—i.e., the right to possess a firearm for self-defense in the

In its recent *Bruen* decision, the Supreme Court clarified and employed "the text, history, and tradition test" required by *Heller* and *McDonald* when analyzing Second Amendment claims. *Bruen*, 142 S.Ct. at 2161 (Kavanaugh J., concurring) (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008) *and McDonald v. Chicago*, 561 U.S. 742 (2010). In doing so, the Court abrogated the two-step inquiry adopted by the Circuit Courts. Specifically, the Court rejected the second step of the two-part inquiry and instead relied on "[s]tep one of the predominant framework [because it] is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 142 S.Ct. at 2127. Under this *Bruen* framework "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 2126. The government then "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with historical tradition may a court conclude that the individual's conduct falls outside of the Second Amendment's 'unqualified command.'" *Id*.[3]

### 1. The Second Amendment's plain text covers conduct at issue in § 922(g)(3).

Title 18 United States Code Section 922(g)(3) prohibits possession of a firearm for any person "who is an unlawful user of or addicted to a controlled substance.[4] As noted above, under

---

home—trigger[ed] strict scrutiny, while a regulation that [did] not encroach on the core of the Second Amendment [was] evaluated under intermediate scrutiny." *Id.*

[3] Stated simply, when presented with a Second Amendment challenge, the court engages in a two-part inquiry. First, it analyzes the <u>conduct</u> at issue and determines whether it is protected by the Second Amendment. Where the conduct is protected, the court then reviews the nature of the prohibition (i.e. the conduct or status stripping one of their Second Amendment right under the statute at issue).

[4] In full, §922(g)(3) states

It shall be unlawful for any person—who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)… to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Because shipment, transport, and receipt all inherently require that a person must, at some point, possesses the firearm, each act criminalized falls within the scope of the Second Amendment.

4

the *Bruen* framework, courts are first tasked with determining whether the Second Amendment's plain text covers an individual's conduct. *Bruen*, 142 S. Ct. at 2129-30. Where it does, the Constitution presumptively protects the conduct, *id*., and the burden shifts to the Government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation at the time the Second Amendment was ratified. *Id*. at 2130, 2136 (quoting *Heller*, 544 U.S. 634-635) ("[N]ot all history is created equal. 'Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*.'") (emphasis in original).

Applying this framework to § 922(g)(3), the conduct of any individual charged under this section, including Mr. Sanchez—i.e., possession, of a firearm—is clearly covered by the plain text of the Second Amendment. Section 922(g)(3) is a complete bar on possession, nearly unlimited in its reach. It is not limited by the type of firearm or the purpose for which the firearm might be used, and it is not limited to firearms possessed in a particular public area and applies with equal force to firearms kept in the home for self-defense.[5]   A person's ability to possess a firearm for self-defense is the central component of the Second Amendment Right.[6] Because § 922(g)(3)

---

[5] Even if such a limitation existed, however, the Supreme Court has now expressly held that the right to possess firearms outside of the home for self-defense is protected by the Second Amendment as well. *See Bruen*, 142 S.Ct. at 2122.

[6] Legislative history illustrates that the passage of § 922(g)(3) reflected a now outdated conception of the Second Amendment, and clearly implicates those rights post-*Heller*. Congress, in passing § 922, recognized some potential Second Amendment concerns, but those concerns were assuaged by assurances that the Second Amendment does not confer an individual right to bear arms, a position since rejected by the Supreme Court in *Heller*. The Senate Report explains:

> A number of witnesses at the hearings have raised the question of the constitutionality of Federal firearms legislation, because it would interfere with individual rights guaranteed by the second amendment of the Constitution . . . [court] decisions hold that the second amendment, unlike the first, was not adopted with the individual rights in mind, but is a prohibition upon Federal action which would interfere with the organization of militia by the states of the Union. . . . It is sometimes contended that, aside from the second amendment, there is a natural right to bear arms, or a right stemming from a State constitution. However, it is

places a prohibition on the possession of a firearm, it clearly affects conduct within the scope of the Second Amendment right. Therefore, the law is presumptively unconstitutional. *See Id*. at 2126.

### 2. The Government cannot meet its burden to show that § 922(g)(3)'s restrictions are "consistent with the Nation's historical tradition of firearm regulation."

Because the plain text of the Second Amendment protects receipt and possession of a firearm, the Government bears the burden to show that the restrictions in § 922(g)(3) are "consistent with the National historical tradition of firearm regulation." *See Id*. at 2129-30. Where the challenged statute addresses a "general societal problem that has persisted since the eighteenth century," the Government must provide examples of "distinctly similar" historical regulations. *See Id*. at 2131. On the other hand, where the present statute reflects "unprecedented societal concerns or dramatic technological changes," the Government may show consistency with historical regulation through "relevantly similar" historical analogues. *Id*. at 2132.[7] Whether a challenged statute and historical regulation are "relevantly similar" depends "whether modern and historical

---

well settled that there is nothing inherent in any such right that renders it absolute. The overwhelming majority of State cases hold that the legislature may prescribe regulations and limitations with regard to the carrying of weapons. It is clear, for example, that a State law prohibiting the carrying of revolvers without a license, or forbidding possession of concealed weapons, does not violate either the Federal or that State's constitution. And it is clear that no body of citizens other than the organized State militia, or other military organization provided for by law, may be said to have a constitutional right to bear arms.

1968 U.S.C.C.A.N. 2112, 2169. Congress seemingly acknowledged that the provisions would infringe on an individual's right to bear arms but determined that no such individual right exists. That determination has since been proven incorrect.

[7] The Government must provide historical examples and support for the constitutionality of § 922(g)(3), and the Court is "entitled to decide a case based on the historical record compiled the parties," rather than conducting its own historical surveys. *See id*. at 2130 n.6; *see also id.* at 2150 ("Of course, we are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden."). Moreover, the Government cannot rely on a select few "outlier" regulations, but must show "a tradition of broadly prohibiting" conduct in the manner of § 922(g)(3). *See id*. at 2138, 2156.

regulations impose a comparable burden on the right of armed self-defense, and whether that burden is comparably justified." *Id.* at 2133.[8]

The Supreme Court also explained in *Bruen*, "when it comes to interpreting the Constitution, not all history is created equal. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Bruen*, 142 S.Ct. at 2136 (citing *Heller*, 554 U.S. at 634-35). Historical evidence that long predates [the passage of the Second Amendment][9] may not illuminate the scope of the right if linguistic or legal conventions change in the intervening years…and postenactment history [should not be given] more weight than it can rightly bear." *Id.* at 2136. The Court further expressed its skepticism about reliance on laws passed long after the passage of the Second Amendment explaining "to the extent later history contradicts what the text says, the text controls." *Id.* at 2137.

Evaluating § 922(g)(3), the statute prohibits firearm possession (the conduct) by a person who unlawfully uses or is addicted to a controlled substance (the prohibited status). With this understanding, the government clearly cannot meet its burden to show that the Nation's history,

_____

[8] In its discussion of "reasonably similar" historical analogues, the *Bruen* Court took care to note, "[B]ecause everything is similar in infinite ways to everything else, one needs some metric of enabling the analogizer to assess which similarities are important and which are not. For instance, a green truck and a green hat are relevantly similar if one's metric is 'things that are green.' They are not relevantly similar if the applicable metric is 'things you can wear.'" *Id.* at 2132 (cleaned up) (quoting F. Schauer & B. Spellman, Analogy, Expertise, and Experience, 84 U. Chi. L. Rev. 249, 254 (2017). Thus, when assessing analogical evidence offered by the Government, the court must carefully examine the core consideration of the modern and historical regulations. Where the metrics differ, the regulations cannot be said to be sufficiently similar, and the Government has failed to meet its burden.

[9] The Fourteenth Amendment was specifically implicated in *Bruen* because the Court was tasked with assessing whether a New York state law violated an individual's Second Amendment rights. As such, the Court found historical evidence around the passage of the Second Amendment (1791) as well as the Fourteenth Amendment (1886) to be most persuasive when determining the framers' intent. The Supreme Court did not specifically address which period should be given greater weight when considering a federal statue. However, because the ratification of the Fourteenth Amendment has no bearing on the Second Amendment as applied federally, reason dictates that historical tradition at the time of the passage of the Second Amendment, i.e., the eighteenth century, controls. *See Bruen*, 142 S.Ct. at 2154, n. 28.

particularly around the passage of the Second Amendment, supports firearm restrictions for those addicted to or who unlawfully used a controlled substance.

As in *Heller* and *Bruen*, historical examples of regulations proffered by the Government must be "distinctly similar" to § 922(g)(3) because the restriction does not address "unprecedented societal concerns or dramatic technological changes[.]" *See Bruen*, 142 S. Ct. at 2132–33. There are no "distinctly similar" regulations from the founding. Indeed, the history of barring firearm possession by those who use or are addicted to controlled substances (or narcotics in general) is limited and relatively recent. Congress first passed §922(g)(3) in 1968. *See* Gun Control Act of 1968, Pub. L. 90–618, 82 Stat. 1213 (codified at 18 U.S.C. § 921 *et seq.*). This was the first time in the Nation's history that Congress enacted such a ban. The Government cannot rely on the passage of a mid-twentieth century statute to establish a long-standing historical tradition dating back to the enactment of the Second Amendment, particularly where it contradicts the plain language of the text. *See Bruen*, 142 S. Ct. at 2137. In fact, the Supreme Court specifically declined to consider <u>any</u> twentieth century evidence offered by the respondents in *Bruen*, noting it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id*. 142 S.Ct. at 2154, n. 28.

Nor can the Government rely on the general pronouncement by the Supreme Court in *Heller* that presumptively lawful regulatory measures include "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626-27. The list does not include those who are accused of being addicted to or an unlawful user of a controlled substance. As discussed above, those regulations would not be "distinctly similar" to § 922(g)(3) to address a "general societal

problem." Even if § 922(g)(3) were a uniquely modern regulation, such that the Court could expand its historical analysis to include merely similar historical analogues, those longstanding regulations are not "relevantly similar"—i.e., they do not impose a comparable burden or evince comparable justifications. *See Bruen*, 142 S. Ct. at 2132-33. While the examples provided by the Court in *Heller* were not exhaustive, they generally all comport with a historical principle of disarming select groups for the sake of public safety. *See NRA*, 700 F.3d at 200-01 (citing Saul Cornell, *Commonplace or Anachronism: The Standard Model, the Second Amendment, and the Problem of History in Contemporary Constitutional Theory,* 16 Const. Comment. 221, 231–36 (1999)). There is no comparable "public safety" justification for disarming all drug users. Moreover, the Supreme Court has since explained, however, that the "government may not simply posit that the regulation promotes an important interest." *Bruen*, 142 S. Ct. at 2126. Therefore, the Government cannot rely on general public safety justifications to uphold § 922(g)(3).

### 3. Section 922(g)(3) infringes on Mr. Sanchez's right to bear arms.

Even if this Court finds that § 922 (g)(3) does not violate the Second Amendment on its face, it should not apply to a person, like Mr. Sanchez, who was found with controlled substances in his pocket,[10] and who is alleged to have used marijuana twice. This set of circumstances is, most certainly, not "distinctly similar" or even "relevantly analogous" to founding era prohibitions on the right to bear arms. During this Nation's founding, hemp, the same plant as marijuana, was "widely grown in the United States." Johnson, Hemp as an Agricultural Commodity, Congressional Research Service (Mar. 23, 2007) (June 22, 2018), available at https://fas.org/sgp/crs/misc/RL32725.pdf (last accessed July 22, 2022) ("Hemp as an Agricultural Commodity"). Yet, it was not until 1914 that states began limiting use of cannabis flowers. *Id.*

---

[10] Notably, the Government has not alleged that Mr. Sanchez did not have a prescription for the suspected Xanax the officers claim was found in his pocket.

(citation omitted). Other types of intoxicants existed at the founding as well, and the Government cannot establish that eighteenth century history supports stripping a man of his ability to defend himself because he ingested an intoxicant on two occasions. "[T]he enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636. Because the Second Amendment "codified a *pre-existing* right," *Bruen*, 142 S. Ct. at 2127, this principle necessitates judicial intervention where the Government attempts to deprive an individual, like Mr. Sanchez, of his Second Amendment right to possesses a firearm.

Therefore, the Government cannot establish that § 922(g)(3) is consistent with the Nation's historical tradition of firearm regulation, and the Court should dismiss the Indictment because it violates the Second Amendment facially and as applied to Mr. Sanchez. *See* U.S. CONST. amend. II; *Heller*, 554 U.S. at 628; *See generally Bruen*, 142 S. Ct. 2111 (2022).

**B.**  **Section 922(g) (3) Violates Mr. Sanchez's Due Process Rights because the Statute is Unconstitutionally Vague, Facially and As Applied.**

Mr. Sanchez also asks the Court to dismiss the Indictment, because § 922(g)(3) violates his due process rights under the Fifth Amendment. Section 922(g)(3) prohibits possession of a firearm where an individual is found to be "addicted to" or an "unlawful user of" a controlled substance. However, the statue itself fails to define what it means to be an addict or one who unlawfully uses a controlled substance thereby creating a number of vagueness problems.

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Courts have long held that the "Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague, that it fails to give ordinary people fair notice of the conduct it punishes or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 596 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357-358 (1983)). Indeed, "a vague law is no law

at all." *Davis*, 139 S.Ct. at 2323. In addition to violating due process guarantees, vague laws contravene the basic tenet of the separation of powers doctrine. *Id.* at 2325 (affirming that vague laws allow "relatively unaccountable police, prosecutors, and judges," rather than elected representatives, to define the law thereby undermining "democratic self-governance"); *see also Kolender*, 461 U.S. at 358 ("[I]f the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, [it would] substitute the judicial for legislative department") (cleaned up). Thus, where a law is so vague it violates one's due process rights, "the role of courts under our constitution is not to fashion a new, clearer law…but to treat the law as a nullity and invite Congress to try again." *Davis*, 139 S.Ct. at 2323.

### 1. Section 922(g)(3) is facially void-for-vagueness because the text is ambiguous.

Congress' decision to leave basic terms within § 922(g)(3) undefined renders it facially invalid because the statute fails to provide individuals of common intelligence notice as to whether they fall within its proscribed class. Courts, in their unsuccessful efforts to cure its constitutional infirmities, constructively rewrote § 922(g)(3) thereby violating the Separation of Powers Doctrine. As it is written, § 922(g)(3) must be stricken as facially void-for-vagueness.[11] *See United States v. Morales-Lopez*, No. 2:20-CR-00027-JNP, 2022 WL 2355920, at *8 (D. Utah June 30, 2022).

In pertinent part, § 922(g)(3) prohibits possession of a firearm by one who is addicted to or an unlawful user of a controlled substance. 18 U.S.C. § 922(g)(3). The statute points to 21

---

[11] Insofar as the Government attempts to argue that Mr. Sanchez is barred from bringing a facial void for vagueness challenge, the Supreme Court's holdings in *Johnson v. United States,* 576 U.S. 591 (2015) and *District of Colombia v. Heller*, 544 U.S. 570 (2008) make it clear that a facial void for vagueness challenge is proper. *See United States v. Morales-Lopez*, No. 2:20-CR-00027-JNP, 2022 WL 2355920, at *8 (D. Utah June 30, 2022).

U.S.C. §802 when defining the term "controlled substance;" however, the text provides no such clarification for what it means to be "addicted to" or an "unlawful user." The plain meaning of the terms mirror the dictionary definitions and both are, therefore, equally unavailing. [12] The term "addict" is defined as: (1) "one exhibiting a compulsive, chronic, physiological or psychological need for a habit-forming substance, behavior, or activity," or (2) one strongly inclined to do, use, or indulge in something repeatedly." *See* Miriam-Webster.com (2022) (definition of "addict"). Reading the definitions of "addict" back into the statute, the ambiguity remains, and a new problem of temporal nexus arises. Further, the statute does not clarify when a behavior becomes compulsive or chronic, or how an individual, officer, prosecutor, judge, or jury, will determine when a behavior or activity has become a physiological or psychological need or habit. The statute fails to clarify whether the Government must prove status through expert evaluations, reports, criminal history, or testimony; it does not specify whether there must be some overt act, whether an attempt suffices, or if the mere inclination without action is sufficient to deprive one of their constitutional rights. Similarly, one cannot be certain if they are "strongly inclined" to do, use, or indulge in something repeatedly without further clarification under the statute. As it stands, §922(g)(3) is silent.

Looking then to the term "user," it is defined as: "one who uses." *See Id.* (2022) (definition of "user"). Section 922(g)(3), therefore, prohibits firearm possession by one who unlawfully "uses" a controlled substance, but does not clarify if there are any constraints on when such use took place. On its face, the statute would prohibit firearms for a wide range of people, from those who ever unlawfully used a controlled substance to those currently unlawfully using a controlled

---

[12] Notably, the terms "addict" and "user" must be read independently, each having its own separate meaning within § 922(g)(3) as courts have understood the "or" between the two terms ("an unlawful user of <u>or</u> addicted to") to be disjunctive rather than conjunctive. *Morales-Lopez*, 2022 WL 2355920, at *8 (citing *Sobolewski v. United States*, 649 Fed. App'x 706, 710 (11th Cir. 2016) (unpublished) ("[T]his Court has recognized that the disjunctive form of § 922(g)(3) prohibits *either* unlawful users of controlled substances *or* addicts from possessing firearms.")).

substance. Without a temporal link or well-defined threshold for obtaining the prohibited status, individuals are left to read § 922(g)(3) with the understanding that "once an addict (or user), always an addict" and as such always barred from possession of a firearm. However, this simply cannot be the case. In assessing the constitutionality of § 922(g)(3) under the Second Amendment, the Seventh Circuit noted unlawful drug users "could regain [their] right to possess a firearm by simply ending [their] drug abuse." *United States v. Yancey*, 621 F.3d 681, 696 (7th Cir. 2010). Moreover, several circuits, including the Fifth, have rejected such an expansive interpretation of § 922(g)(3) recognizing that a temporal nexus must be read into the statute to avoid rendering it unconstitutional. *See United States v. Patterson*, 431 F.3d 832, 839 (5th Cir. 2005) (upholding § 922(g)(3) against an "as applied" vagueness challenge) (citing *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003) (citations omitted)). Thus, the plain language of the statute renders § 922(g)(3) unworkable because it subject to multiple interpretations each more problematic and ambiguous than the last.

Turning to the context of the broader statute, the vagueness concerns of § 922(g)(3) are compounded. Unlike § 922(g)(1) (possession of a firearm by one convicted of a felony) or § 922(g)(4) (possession of a firearm by one adjudicated as a mental defective or who has been committed to a mental institution), § 922(g)(3) has no adjudication requirement or prerequisite of a discrete act, such as <u>commitment</u> to an institution, prior to one obtaining the restricted status.[13] Without a discernable threshold for when one obtains the status "addict" or "unlawful user of" a controlled substance, it cannot be said that the statue is unambiguous, nor does it provide an ordinary person notice of the statutory proscriptions.

---

[13] In drawing these comparisons it is not Mr. Sanchez's intention to comment on the constitutionality of §§ 922(g)(1) or (4). Rather, Mr. Sanchez only points to the linguistic differences insofar as they underscore the vagueness issues of § 922(g)(3).

Likewise, Congressional intent sheds no light on the ambiguities. The legislative record indicates that "the principal purpose of the federal gun control legislation… was to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." *Huddleston v. United States*, 415 U.S. 814, 824 (1974) (cleaned up) (quoting S.Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968). U.S.Code Cong. & Admin.News 1968, p. 4410; *see also*, Congressman Celler, the House Manager114 Cong.Rec. 13647, 21784 (1968) ("No one can dispute the need to prevent drug addicts, mental incompetents, persons with a history of mental disturbances, and persons convicted of certain offenses, from buying, owning, or possessing firearms. This bill seeks to maximize the possibility of keeping firearms out of the hands of such persons."). Subsequent legislative history of § 922(g)(3) is equally telling. Since its passage, Congress has amended § 922(g)(3) several times but at no time has it clarified what it means to be "addicted to" or "an unlawful user of" the prohibited substance(s). *See e.g.*. H.R. REP. 99-495, 14, 1986 U.S.C.C.A.N. 1327, 1340 (expanding the list of substances prohibited under § 922(g)(3)); 1970 U.S.C.C.A.N. 4007, 4011(prohibiting the sale of explosives to "drug addicts"). Congress *did*, however, provide guidance under the NICS[14] Improvement Amendments Act of 2007 in which it stated that a record, for purposes of § 922(g)(3):

> identifies a person who is an unlawful user of, or addicted to a controlled substance (as such terms "unlawful user" and "addicted" are respectively defined in regulations implementing section 922 (g)(3) of title 18, United States Code, as in effect on the date of the enactment of this Act) as demonstrated by arrests, convictions, and adjudications, and whose record is not protected from disclosure to the Attorney General under any provision of State or Federal law.

H.R. REP. 115-437, 20. Though this, too, fails to supply a definition for what it means to be a "addicted to" or "an unlawful user of" a controlled substance, Congress has, at the very least,

---

[14] National Instant Criminal Background Check System

demonstrated that it is possible and desirable for the Attorney General to obtain verifiable information establishing a history of drug use as it relates to § 922(g)(3). It follows then that Congress has the ability, as well as the constitutional mandate, to abandon or amend § 922(g)(3) such that an ordinary person understands its proscription and ensures against arbitrary enforcement. *Dimaya*, 138 S.Ct. at 1212.

From legislative history it is clear that Congress intended to bar certain classed people from possession of a firearm. However, how to identify this class and how one may evaluate their risk of entering this class remains unanswered. *E.g. Johnson*, 576 U.S. at 598 (finding the residual clause of the Armed Career Criminal Act void for vagueness and noting the clause "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony"). "Without knowledge of [their criminal] status, [a] defendant may well lack the intent needed to make [their] behavior wrongful." *Rehaif v. United States,* 139 S.Ct. 2191, 2197 (2019) (holding that that prosecution under 18 U.S.C. §922(g) and §924(a)(2), [15] requires that the government "prove *both* that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm") (emphasis added). Scienter requirements, such as the one examined by the Court in *Rehaif*, are consistent with the understanding that, underlying criminal law, is the principle of "a vicious will." *Id.* at 2196 (citing 4 W. Blackstone, Commentaries on the Laws of England 21 (1769)). Throughout his vagueness analysis of § 922(g)(3), Mr. Sanchez demonstrates that the plain language of the statute, congressional history, and judicially created definitions, *infra*, all fail to provide an individual with notice of their status

---

[15] At the time the Court issued is decision in *Rehaif*, § 924(a)(2) set forth the penalties for any violation of § 922(g). As of June 25, 2022, the penalties for a violation of § 922(g), occurring after the statute's amendment (i.e. after June 25, 2022) are found in § 924(a)(8). 18 U.S.C. § 924(a)(2) *amended by* 18 U.S.C. § 924(a)(8). In amending the penalties, Congress increased the statutory maximum penalty under § 922(g) from ten years to fifteen years. This change has no bearing on the Court's holding in *Rehaif* nor does it impact Mr. Sanchez's challenge to § 922(g)(3) because the original language of § 924(a)(2) and the current language of § 924(a)(8) require an individual to knowingly violate § 922(g). *Id.*

as an "unlawful user" or one who is "addicted to" a controlled substance. *Rehaif* 139 S. Ct. at 2200. This exact observation underscores the vagueness problem at the core of § 922(g)(3). Without comprehensible statutory definitions, it is unclear when a person begins or ends use of a controlled substance that is so regular as to be barred from possession of firearm or so infrequent as to suddenly regain their Second Amendment right. Taken together, § 922(g)(3) and § 924(a)(2) are incompatible. *Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883) ("[Courts] give effect, if possible, to every clause and word of a statute"). Unless one <u>first</u> knows their status as one who is "addicted to" or an "unlawful user of" a controlled substance, they cannot <u>knowingly</u> commit a violation of § 922(g)(3). The constitutional infirmities of § 922(g)(3) are so grave and the statute so vague, it renders § 924(a)(2) meaningless and unenforceable.

Because the statutory language of § 922(g)(3) is so vague it fails to provide an ordinary person "fair warning about what the law demands of them including whether they fall within a prohibited status under the statute, it must be found unconstitutionally vague."[16] *See United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

### 2. Judicial attempts to salvage § 922(g)(3) failed to cure the statute's vagueness issues.

Recognizing that, without more, § 922(g)(3) fails to provide an ordinary individual notice of exactly what is banned under the law, courts have attempted to address the statutory deficiencies. *See United States v. Patterson*, 431 F.3d 832, 839 (5th Cir. 2005). Specifically, courts admitted that the plain language of § 922(g)(3) "runs the risk of being unconstitutionally vague without a <u>judicially created</u> temporal nexus between the gun possession and regular drug use." *United States v. Patterson*, 431 F.3d 832, 839 (5th Cir. 2005) (emphasis added) (quoting *United*

---

[16] Counsel is unaware of a case interpreting § 922(g)(3) which finds that the plain language of the statute clearly and unambiguously provides notice as to the exact class of individuals it prohibits from possessing a firearm.

*States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003) (citations omitted)); *see also United States v. Burchard*, 580 F.3d 341, 350 (6th Cir. 2009) (citing *United States v. Ocegueda*, 564 F.2d 1363, 1366 (6th Cir. 1977) ("Had Ocegueda used a drug that may be legally used by laymen in some circumstances, or had his use of heroin been infrequent and in the distant past, we would be faced with an entirely different vagueness challenge to the term, "unlawful user"…)); *United States v. Augustin*, 376 F.3d 135, 139 (3d Cir. 2004); *United States v. Purdy*, 264 F.3d 809, 812–13 (9th Cir. 2001).

In an effort to eliminate the ambiguities, courts worked to define its terms with some utilizing the definition of "addict" found in 21 U.S.C. § 802(1) which states:

> An addict is defined as any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to lost the power of self-control with reference to his addiction.

*See United States v. Herrera*, 313 F.3d 882, 887 (5th Cir. 2002) (DeMoss, J., dissenting); *United States v. Patterson*, 432 F.3d 832, 839 (5th 2005). This definition cannot suffice because it creates new ambiguities while failing to establish a nexus between the habitual use of a controlled substance and possession of a firearm; as written, it is unclear whether addiction at any point in one's life permanently bars them from gun ownership. *See Turnbull*, 349 F.3d at 561. Further, the definition found in § 802(1) applies to a much smaller category of substances than those proscribed under § 922(g)(3)—those legally defined as "narcotics" rather than "controlled substances." *Compare* 21 U.S.C. § 802 (6) and (17). Without express Congressional intent evidenced through a statutory amendment or clear legislative history, application of this definition is improper. Certainly, if Congress intended to deprive an individual, as defined under § 802(1), of their constitutional right to bear arms, it would have taken the opportunity to incorporate, by reference, § 802(1) just as it did when it gave meaning to "controlled substances." By declining to do so when

amending § 922(g)(3), Congress signaled its rejection of the definition of "addict" under § 802(1) within this context.

While the Fifth Circuit has not defined what it means to be an "unlawful user" under § 922(g)(3), it has indicated that it views it as a "lower" standard than that that which is required under the term "addicted to." *See Patterson*, 432 F.3d at 839 (finding a jury instruction mirroring the language of § 802(1) set a standard "approaching 'addict' [rather than the] lower standard of 'unlawful user'"). Courts across the circuits generally agree that "to be an unlawful user, one needed to have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm." *United States v. Augustin*, 376 F.3d 135, 139 (3d Cir. 2004); *see also United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002); *United States v. Burchard*, 580 F.3d 341, 350 (6th Cir. 2006); *United States v. Purdy*, 264 F.3d 809,812-813 (9th Cir. 2001). As is readily apparent, attempts to define "unlawful user" created a judicially imposed temporal nexus and recognized a need for some sort of showing of regular or habitual use. However, without an adjudication requirement or nexus between the "regular use" and the possession of the firearm at issue, § 922(g)(3) still lacks a discernable threshold by which one can determine whether they are permitted to possess a firearm. Finally, in requiring the government to prove "regular" unlawful use of a controlled substance, courts are necessarily mandating the introduction of character evidence which is "usually off limits during the guilt phase of a criminal trial." *Davis*, 139 S.Ct. at 2329 (rejecting the government's reading of § 924(c)(3)(B), in part, because it would require courts to improperly consider character evidence); Fed. Rule Evid. 404.

Each judicial attempt to inject clarity into § 922(g)(3) not only failed, it emphasized the statue's hopeless indeterminacy.

### 3.  Judicial attempts to salvage § 922(g)(3) violates the Separation of Powers Doctrine.

Setting aside the courts' unsuccessful attempts to cure § 922(g)(3) of its constitutional ills, the Supreme Court in its *Davis* decision, unequivocally rejected the notion of judicial intervention aimed at saving a vague law. See *Davis*, 139 S. Ct. at 2323 ("Only the people's elected representatives in Congress have the power to write new federal criminal laws"). When "Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again" *Id.* In part, this mandate exists to "[guard] against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018).

As examined above, both the plain language of the statute as well legislative history of § 922(g)(3) fail to provide insight into exactly which class of people Congress intended to exclude from those who may exercise their Second Amendment rights. Stated differently, there is nothing contained within the statute or history that supports or lends credence to the judicially created definitions of "addicted to" and "unlawful user." Rather, the case law is clear. Courts recognized the vagueness problems inherent in § 922(g)(3), and rather than looking to Congress to clarify its intent, courts fundamentally rewrote the law in order to create meaning where there was none. *See Turnbull*, 349 F.3d at 561. Section 922(g)(3) may only be rectified, as it relates to a void for vagueness challenge, through congressional action addressing the statutory deficiencies. Congress' decision not to do so, especially when it has taken steps to clarify similar terms in other contexts, *ante*, is not an invitation to the courts to abandon judicial restraint. *Davis*, 139 S.Ct. at 2333; *Morissette v. United States*, 342 U.S. 246, 263, (1952) ("The spirit of the doctrine which denies to the federal judiciary power to create crimes forthrightly admonishes that we should not

enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute"). Thus, continued attempts to judicially define or salvage § 922(g)(3) are not only proving to be futile, they are an unconstitutional violation of the Separation of Powers doctrine. As such, the statute, as written by Congress, must be stricken as void for vagueness.

### 4.  Section 922(g)(3) is unconstitutionally vague as applied to Mr. Sanchez.

Section 922(g)(3) is unconstitutionally vague, as applied, because Mr. Sanchez did not have fair notice that under, under the statute, he was prohibited from possessing a firearm. A statue is void for vagueness, as applied, where "the terms and judicial constructions of a statute may make it apply unquestionably to certain activities, [but] its application to other activities may remain uncertain due to the absence of a stated standard for inclusion or exclusion of activities from its scope." *United States v. Salisbury*, 983 F.2d 1369, 1378 (6th Cir. 1993) (finding a statute void for vagueness, as applied, where the plain language, judicial interpretation, and legislative history failed to clearly proscribe defendant's conduct) (citing *Smith v. Goguen*, 415 U.S. 566 (1974)).

Based on the plain language of § 922(g)(3), Mr. Sanchez could not have known he qualified as one who is "addicted to" or an "unlawful user of" a controlled substance.[17] As Mr. Sanchez established, *ante,* Congress has given neither term substantive meaning within the statue. Thus, Mr. Sanchez could not have understood that he fell within § 922 (g)(3)'s prohibited class based on the language of the statute alone. Looking then to the definitions set forth by the various circuits and in considering the Government's arguably admissible evidence, Mr. Sanchez's history, does not establish that he is one who "regularly engages" in unlawful use of a

---

[17] Mr. Sanchez does not concede that he is, in fact, lawfully subject to prosecution under § 922(g)(3).

controlled substance "over a period of time proximate to or contemporaneous" with his arrest in the present matter. Unlike the defendants contemplated in the cases cited above, Mr. Sanchez does not have a demonstrable history of regular use of a controlled substance at or around the time of his purported possession of a firearm. Rather, he has one prior juvenile adjudication for possession of marijuana. That, combined with the circumstances surrounding his arrest, appears insufficient to establish that Mr. Sanchez is or was an addict or unlawful user of a controlled substance as defined by the courts. Because his history and behavior do not rise to the level of judicially drafted standards under the law, Mr. Sanchez was left to "guess about what [§ 922(g)(3)] demands," *Dimaya*, 138 S. Ct. at 1232 (Gorsuch, J. concurring), and therefore had no notice that his right to possess a firearm was in jeopardy.

It must be noted that, in assessing an as applied challenge in this matter, we again see the problematic convergence of § 922(g)(3) and the rules of evidence. With limited exception, evidence of a defendant's juvenile record is inadmissible at trial, *see* Fed. Rule Crim. Pro. 609(d) (delineating the limited circumstances in which an individual's juvenile adjudications are admissible as impeachment evidence). Additionally, Mr. Sanchez's adjudication was entered in 2017, prior to the passage of the Farm Bill which federally legalized hemp. Because there is no way to determine whether Mr. Sanchez possessed hemp in 2017, it is unclear whether the Government may use this adjudication to prove that Mr. Sanchez used a controlled substance prior to his arrest in the present matter. *See United States v. Belducea-Mancinas*, No. 20-50929, 2022 WL 1223800 (5th Cir. Apr. 26, 2022) (unpublished) (Higginson, J., concurring). Based on the plain language of the statute and judicially created definitions, § 922(g)(3) is so vague it failed to give Mr. Sanchez fair notice that he fell within its prohibited class, and any enforcement of the statute against Mr. Sanchez is arbitrary. *See Johnson*, 576 U.S. 596.

Therefore, § 922(g)(3) deprives Mr. Sanchez of his Due Process under the Fifth Amendment and any attempt by this Court or any other to address the statutory deficiencies violates the separation of powers doctrine. Thus, the Court should dismiss the Indictment.

## IV.    CONCLUSION

WHEREFORE, for the foregoing reasons, Mr. Sanchez respectfully requests that the Court dismiss the Indictment.

Respectfully Submitted,

Maureen Scott Franco
Federal Public Defender


/S/
ASHLEY ASKARI
Assistant Federal Public Defender
Western District of Texas
800 Franklin Avenue
Waco, Texas 76701
(915) 352-2940
Florida Bar Number: 99281

*Attorney for Defendant*

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CASE NUMBER W:21-CR-00213 |
| | § | |
| | § | |
| ANDRE EDWARDS SANCHEZ | § | |

**ORDER**

On this day, the Court considered Defendant's Motion to Dismiss the Indictment, and

the Court is of the opinion that the motion should be GRANTED. Accordingly, it is hereby:

ORDERED that the Indictment in this cause is DISMISSED.

SIGNED this_____day of_____, 2022.


_____
ALAN D. ALBRIGHT
UNITED STATES DISTRICT JUDGE